PAMELA K. FULMER
PAM@FULMERWARE.COM
FULMER WARE LLP
4 EMBARCADERO CENTER, SUITE 1400
SAN FRANCISCO, CA 94111
T 415.766.3509
F 415.231.5272

ALPER T. ERTAS
ATERTAS@VENABLE.COM
VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
T 415.343.3214
F 415.653.3755

PENDING PRO HAC VICE:
ADAM R. HESS
ARHESS@VENABLE.COM
VENABLE LLP
575 SEVENTH STREET, NW
WASHINGTON, D.C. 20004
T 202.344.4000
F 202.344.8300

Attorneys for Plaintiff
KHN SOLUTIONS, INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHN SOLUTIONS, INC., | Case No. 3:16-cv-00962 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| VERTISENSE INC., | |
| Defendant. | |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff KHN Solutions, Inc. ("KHN") hereby files this Complaint against Defendant Vertisense Inc. ("Vertisense") for patent infringement and alleges, based on information and belief, personal knowledge and publically available information, with respect to the infringing activities as follows:

## THE PARTIES

1. KHN is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 300 Broadway Suite #26 in San Francisco, California. KHN is the owner of U.S. Patent Number 9,076,317 ("the '317 Patent" or "the Patent-in-Suit").

2. Upon information and belief, Vertisense is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business located at 65 East 76th Street, New York, New York, 10021. Vertisense was formed in or around July 2015, and was formerly named Alcohoot Inc. Vertisense may be served through its registered agent, United Corporate Services, Inc., at 874 Walker Rd, Suite C, Dover, Delaware 19904.

## JURISDICTION AND VENUE

3. This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Vertisense, because Vertisense has conducted and continues to conduct business in the State of California and in this District. Vertisense, directly and/or through third-party manufacturers, makes or assembles devices, including without limitation, products marketed under the names "Alcohoot," "TRANSIT™ Connect" and "INTREPID Connect" (collectively, the "Accused Products"). Upon information and belief, Vertisense, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale or sells one or more of the Accused Products in the Northern District of California through the websites http://alcohoot.com and http://www.vertisense.com. Upon information and belief, the Alcohoot System can also be

purchased in retail locations nationwide and online from numerous e-commerce vendors. Upon information and belief, Vertisense, directly and/or through distribution networks, regularly places the Alcohoot System within the stream of commerce with the knowledge and/or understanding that it will be sold and used in the Northern District of California. These acts constitute patent infringement within the State of California and within the Northern District of California. Vertisense has purposefully availed itself of the benefits of the State of California and the exercise of jurisdiction over Vertisense does not offend traditional notions of fair play and substantial justice.

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), because a substantial part of the events giving rise to KHN's claim for patent infringement occurred in this District and because Vertisense is subject to personal jurisdiction in this District.

**INTRADISTRICT ASSIGNMENT**

6. Pursuant to Civil Local Rules 3-5(b) and 3-2(c), because this action is an intellectual property action, it is properly assigned to any of the divisions in this District.

**THE PATENT-IN-SUIT INFRINGED BY VERTISENSE**

7. The '317 Patent, entitled "*Method and System for Monitoring Intoxication*," is valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code by the United States Patent and Trademark Office ("USPTO") on July 7, 2015. The '317 Patent is a continuation of U.S. Patent No. 8,878,669 filed January 30, 2014 and claims priority from U.S. Provisional Application Ser. No. 61/812,704 filed April 16, 2013 and U.S. Provisional Application Ser. No. 61/759,390 filed January 31, 2013. A true and correct copy of the '317 Patent is attached hereto as Exhibit A.

8. KHN is the sole owner by assignment of all rights, title, and interest in the '317 Patent. A true and correct copy of the assignment of the '317 Patent to KHN is attached hereto as Exhibit B.

**FACTUAL ALLEGATIONS AND BACKGROUND**

**THE PLAINTIFF KHN SOLUTIONS, INC.**

9. In 2001, KHN was founded by Keith Nothacker in San Francisco, California.

1   From its inception, KHN has been dedicated to developing and commercializing cutting-edge,
2   patented technology for measuring blood alcohol content ("BAC"), monitoring and analyzing
3   intoxication and intoxication patterns specific to a user.

4   10.     In 2004, KHN obtained clearance for the use of its first portable breathalyzer from
5   the U.S. Food and Drug Administration. KHN's breathalyzer products are used by consumers,
6   businesses, schools, clinics, hospitals, the military and law enforcement. KHN's breathalyzer
7   products have been tested and featured in publications and television shows, such as The New
8   York Times, Wall Street Journal, Wired, Inc. Magazine, Mythbusters, Car & Driver and Dr. Phil.

9   11.     In 2013, KHN created the world's first smartphone breathalyzer, integrating a
10  portable breathalyzer unit with a smartphone application used to monitor and analyze the
11  intoxication of a user. Through its brand "BACtrack", KHN has become the market leader in
12  portable breathalyzer technology.

**THE DEFENDANT VERTISENSE, INC. AND THE ACCUSED PRODUCTS**

14  12.     Upon information and belief, Vertisense, formerly Alcohoot Inc., directly and/or
15  through third parties contracted by Vertisense, develops, manufactures, assembles, markets, offers
16  for sale, sells, and tests breathalyzer devices, including without limitation the Accused Products.[1]

17  13.     Upon information and belief, the Alcohoot System comprises a breathalyzer unit
18  that operates in conjunction with a mobile application. The Alcohoot mobile application runs on
19  a user's smartphone. In operation, a user activates the Alcohoot System by plugging the
20  Alcohoot breathalyzer unit into the 3.5 mm headphone jack of a smartphone and initiating the
21  Alcohoot mobile application. The Alcohoot mobile application directs the user to blow into the
22  Alcohoot breathalyzer unit, which includes a sensor that converts the user's breath signals into a
23  BAC value, *i.e.*, an intoxication metric. The Alcohoot mobile application displays the user's
24  BAC value and creates a graph of the user's BAC over time. The Alcohoot mobile application
25  also displays a notification indicating the potential effects of the user's BAC.[2]

---

[1] *See also* http://www.vertisense.com/products/.

[2] *See also* http://alcohoot.com/pages/device-spotlight; http://alcohoot.com/ (The Alcohoot Application provides a notification stating: "You may experience reduced coordination and exaggerated behavior").

1  14.  Upon information and belief, Vertisense provides a manual with the Alcohoot
2  breathalyzer unit. The manual provides instructions to download the Alcohoot mobile application
3  and use the Alcohoot breathalyzer unit as described in this Complaint. *See* Exhibit C (Alcohoot
4  Manual). The Alcohoot website also provides instructions to use the Alcohoot System as
5  described in this Complaint.[3] The Alcohoot mobile application provides a "Walkthrough"
6  including instructions and a video showing a user how to use the Alcohoot System as described in
7  this Complaint. Through these and other means, Vertisense intends and encourages customers to
8  use the Alcohoot System as described in this Complaint.

9  15.  Upon information and belief, in addition to the Alcohoot System, Vertisense,
10 directly and/or through third-parties contracted by Vertisense, develops, manufactures, markets,
11 offers for sale and tests the TRANSIT™ Connect and INTREPID Connect products.[4] Upon
12 information and belief, the TRANSIT™ Connect and INTREPID Connect products comprise a
13 breathalyzer unit, mobile application and backend database server. In operation, the user blows
14 into the breathalyzer unit, which includes a sensor that converts the user's breath signals into a
15 BAC value, *i.e.,* an intoxication metric. The mobile application displays the user's BAC value
16 and creates a graph of the user's BAC values per time. The mobile application transmits the BAC
17 data to the backend database server for analysis or storage.[5]

18 16.  Upon information and belief, Vertisense provided the INTREPID Connect product
19 to the Kansas City Police Department, the Missouri Police Department, the Gurdon, Arkansas
20 Police Department and the Upper Arlington, Ohio Police Department to use and test.[6]

21 17.  Upon information and belief, Vertisense had knowledge of the '317 Patent prior to
22 the commencement of this lawsuit.

23 18.  The use, sale, offer for sale and testing of the Accused Products in the United
24 States infringes one or more claims of the '317 Patent.

---

[3] *See* http://alcohoot.com/pages/device-spotlight; http://alcohoot.com/.

[4] *See e.g.*, http://www.vertisense.com/products/; http://intrepidconnect.com/.

[5] *See also* http://www.vertisense.com/products/.

[6] *See* http://intrepidconnect.com/testpilots/.

19. Through its sales, testing, product manuals, websites and mobile applications associated with the Accused Products, Vertisense has willfully infringed, literally or through the doctrine of equivalents, and continues to willfully infringe, literally or through the doctrine of equivalents, induce others to infringe, and/or contributorily infringes the '317 Patent.

20. Vertisense has infringed the '317 Patent despite an objective likelihood that its actions constituted, contributed to or induced the infringement. The objective likelihood that its actions constituted infringement was either known to Vertisense or was so obvious that it should have been known to Vertisense.

21. Vertisense's infringement of the '317 Patent has been and is deliberate, has directly caused monetary damage to KHN and is an egregious and exceptional case of willful infringement.

22. Vertisense is currently infringing and will continue to infringe unless enjoined from doing so.

23. KHN has been damaged and has suffered irreparable harm as a result of Vertisense's infringement of the '317 Patent, and seeks damages in an amount adequate to compensate KHN for Vertisense's infringement, increased damages for willful infringement, a permanent injunction barring Vertisense from continuing to infringe the '317 Patent, and attorneys' fees and costs associated with this action.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 9,076,317

24. KHN re-alleges and incorporates by reference into this Count I, the allegations contained in paragraphs 1 through 23 of this Complaint.

25. On July 7, 2015, the USPTO duly and legally issued the '317 Patent entitled "*Method and System for Monitoring Intoxication*."

26. Pursuant to 35 U.S.C. § 282, the '317 Patent is presumed valid and enforceable.

27. Keith Harry Nothacker, Pauline Anne Basaran, Stacey Ilene Rettus, Michael Jurgen Strasser, Imraan Aziz, John Paul Walton and Zachary Michael Saul, are joint and true inventors of the '317 Patent. By operation of law and as a result of written assignment

1    agreements, KHN obtained the entire right, title, and interest to and in the '317 Patent. *See*
2    Exhibit B.
3       28.     Upon information and belief, Vertisense infringes literally or under the doctrine of
4    equivalents, induces others to infringe, and/or contributorily infringes one or more claims of the
5    '317 Patent. Non-limiting examples of such infringement are set forth below.
6       29.     Claim 1 of the '317 Patent recites:
7    A method for monitoring intoxication of a user, comprising:
8        receiving a set of signals, derived from a set of breath samples collected from the
9        body of the user at a set of time points, at a sample receiving module;
10       at a processing subsystem, determining a value of an intoxication metric, derived
11       from the set of signals upon receiving information derived from the set of signals by way
12       of a data link coupled to the processing subsystem;
13       at the processing subsystem, generating a predicted temporal profile of the
14       intoxication metric for the user based upon the value of the intoxication metric and the set
15       of time points;
16       at the processing subsystem, generating an analysis of the user's sobriety based
17       upon the predicted temporal profile; and
18       at a device comprising a user interface, providing a notification to the user based
19       upon the analysis, thus facilitating monitoring of the user's intoxication.
20      30.     Upon information and belief, all limitations of at least claim 1 of the '317 patent
21   are literally practiced when a user operates the Alcohoot System. By way of illustration and
22   without limitation, the Alcohoot System receives a set of signals derived from breath samples
23   collected when a user blows into a breath sample intake of the Alcohoot breathalyzer unit. The
24   Alcohoot System includes a processing subsystem that determines the user's BAC values, which
25   is an intoxication metric derived from the set of signals produced from the breath samples. The
26   Alcohoot System includes a processing subsystem that generates a predicted temporal profile
27   graph of the user's BAC values over time and an analysis of the user's sobriety based on the
28   predicted temporal profile. At a user interface, the Alcohoot System provides a notification of the

1  user's BAC, the effects of the user's BAC and a Smartline™ that helps regulate the user's
2  optimal BAC.

3        31.    Upon information and belief, Vertisense's user manual and website instruct users
4  who buy the Alcohoot System to download the Alcohoot mobile application, turn on the
5  breathalyzer unit, attach a mouthpiece to the breathalyzer unit, connect the breathalyzer unit to a
6  smartphone running the Alcohoot mobile application, open and use the Alcohoot mobile
7  application, and blow into the Alcohoot breathalyzer unit, so that the Alcohoot System performs
8  method claim 1 recited above.

9        32.    Upon information and belief, Vertisense is using third parties under Vertisense's
10  control to test the INTREPID Connect product for its intended use.

11        33.    Upon information and belief, all limitations of at least claim 1 of the '317 patent
12  are also literally practiced when a user operates and tests the INTREPID Connect product. By
13  way of illustration and without limitation, the INTREPID Connect product comprises a
14  breathalyzer unit, mobile application and backend database server. The INTREPID Connect
15  product receives a set of signals derived from breath samples collected when a user blows into a
16  breath sample intake of the INTREPID Connect breathalyzer unit. The INTREPID Connect
17  product includes a processing subsystem that determines the user's BAC values, which is an
18  intoxication metric derived from the set of signals produced from the breath samples. The
19  INTREPID Connect product includes a processing subsystem that generates a predicted temporal
20  profile graph of the user's BAC values over time and an analysis of the user's sobriety based on
21  the predicted temporal profile. At a user interface, the INTREPID Connect provides a
22  notification associated with the user's BAC. The INTREPID Connect mobile application
23  transmits the BAC data to the backend database server for analysis or storage.[7]

24        34.    Upon information and belief, Vertisense had notice, through direct or constructive
25  knowledge, of the '317 Patent prior to the commencement of this lawsuit. Vertisense's pre-suit
26  knowledge may be inferred, among other things, from Vertisense's citation to the BACtrack

27

28  [7] *See also* http://www.vertisense.com/products/; http://intrepidconnect.com/how-it-works/.

1  website in the prosecution history of its own patent applications.

2      35.    Upon information and belief, Vertisense induces third-parties, including
3  Vertisense customers, to infringe, or contributes to the infringement of the '317 Patent in
4  violation of 35 U.S.C. § 271(b) and/or § 271(c) by encouraging and facilitating customers to
5  perform actions described in this Complaint that Vertisense knows to be, or is willfully blind to
6  the fact that the induced or contributed actions constitute acts of infringement of the '317 Patent.

7      36.    Vertisense's infringement has been and continues to be willful.

8      37.    KHN has suffered and continues to suffer damages and irreparable harm as a result
9  of Vertisense's past and ongoing infringement.

10      38.    Unless Vertisense's infringement is enjoined, KHN will continue to be damaged
11  and irreparably harmed.

12      39.    KHN meets the criteria for, and is entitled to, a permanent injunction.

13      40.    Upon information and belief, Vertisense's infringement of the '317 Patent has
14  been willful and deliberate, making this an exceptional case and entitling KHN to recover
15  additional damages and attorneys' fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, KHN prays for relief as follows:

A. Judgment that Vertisense has infringed, induced others to infringe, and/or contributorily infringed the '317 Patent;

B. An order permanently enjoining Vertisense from further infringing the Patent-in-Suit;

C. An award of damages in accordance with 35 U.S.C. § 284 adequate to compensate KHN for Vertisense's infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs as fixed by the Court;

C. A declaration that Vertisense's infringement was willful and deliberate, and an increase to the award of damages of three times the amount found or assessed by the Court, in accordance with 35 U.S.C. § 284;

D. An order for an accounting of damages from Vertisense's infringement and

1  supplemental damages for those acts of infringement committed by Vertisense;

2        E.     A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and an

3  award of attorneys' fees and costs; and

4        H.     Any additional award or further relief the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a), KHN demands a jury trial on all issues so triable under the law.

Dated: February 26, 2016

                             Respectfully submitted,

                             By:/s/ PAMELA K. FULMER
                                PAMELA K. FULMER
                                Attorneys for KHN Solutions, Inc.

                             PAMELA K. FULMER
                             PAM@FULMERWARE.COM
                             FULMER WARE LLP
                             4 EMBARCADERO CENTER, SUITE 1400
                             SAN FRANCISCO, CA  94111
                             T 415.766.3509
                             F 415.231.5272

                             ALPER T. ERTAS
                             ATERTAS@VENABLE.COM
                             VENABLE LLP
                             505 MONTGOMERY STREET, SUITE 1400
                             SAN FRANCISCO, CA  94111
                             T 415.343.3214
                             F 415.653.3755

                             PENDING PRO HAC VICE:
                             ADAM R. HESS
                             ARHESS@VENABLE.COM
                             VENABLE LLP
                             575 SEVENTH STREET, NW
                             WASHINGTON, D.C. 20004
                             T 202.344.4000
                             F 202.344.8300

- 10 -
KHN'S COMPLAINT FOR PATENT INFRINGEMENT