United States District Court
Northern District of California

1
2
3
4                              UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7    KHN SOLUTIONS INC.,                        Case No.  16-cv-00962-HSG
                  Plaintiff,
8                                               **ORDER DENYING MOTION TO
          v.                                    DISMISS**
9
                                                Re: Dkt. No. 22
     VERTISENSE INC.,
10
                  Defendant.
11

12

13         In this patent infringement action, Defendant Vertisense, Inc. moves to dismiss on the

14   ground that the asserted patent claims ineligible subject matter.  Dkt. No. 28 ("Mot.").  For the

15   reasons articulated below, the motion is DENIED WITHOUT PREJUDICE.

16   **I.    BACKGROUND**

17         For purposes of this motion, the Court accepts the following alleged facts as true.  Plaintiff

18   KHN Solutions, Inc. is "dedicated to developing and commercializing cutting-edge, patented

19   technology for measuring blood alcohol content ('BAC'), [and] monitoring and analyzing

20   intoxication and intoxication patterns specific to a user."  Dkt. No. 1 ("Compl.") ¶ 9.  Since

21   creating the world's first smartphone breathalyzer, Plaintiff "has become the market leader in

22   portable breathalyzer technology."  *Id.* ¶ 11.  Defendant Vertisense, Inc. "develops, manufactures,

23   assembles, markets, offers for sale, sells, and tests breathalyzer devices," including the

24   "Alcohoot," "TRANSIT Connect," and "INTREPID CONNECT" products (together, the

25   "Accused Products").  *Id.* ¶¶ 4, 12.

26         On February 26, 2016, Plaintiff filed the current action, asserting that the Accused

27   Products infringe United States Patent 9,076,317 ("the '317 Patent") entitled, "Method and System

28   for Monitoring Intoxication."  Claim one of the '317 Patent purports to cover:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> 1.  A method for monitoring intoxication of a user, comprising:
> receiving a set of signals, derived from a set of breath samples collected from the body of the user at a set of time points, at a sample receiving module;
> at a processing subsystem, determining a value of an intoxication metric, derived from the set of signals upon receiving information derived from the set of signals by way of a data link coupled to the processing subsystem;
> at the processing subsystem, generating a predicted temporal profile of the intoxication metric for the user based upon the value of the intoxication metric and the set of time points;
> at the processing subsystem, generating an analysis of the user's sobriety based upon the predicted temporal profile; and
> at a device comprising a user interface, providing a notification to the user based upon the analysis, thus facilitating monitoring of the user's intoxication.

Dkt. No. 1, Ex. A at 22:11-29.  The dependent claims describe receiving supplementary demographic information from the user, administering sobriety tasks, and predicting when the user's intoxication metric will return to zero.  *Id.* at 22:30-65.  Independent claim eight adds "transmitting at least one of the predicted profile, the analysis, and the notification to an entity associated with the user, thus facilitating monitoring of the user's intoxication."  *Id.* at 23:22-25. Finally, independent claim fourteen describes training a user to become more aware of his or her actual intoxication state by comparing the user's self-estimated intoxication state with the user's actual intoxication state.  *Id.* at 24:4-31.

Defendant moves to dismiss on the ground that the '317 Patent claims an abstract idea, and is therefore invalid under 35 U.S.C. § 101.

**II.    DISCUSSION**

**A.    Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on

2

1    its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007).  A claim is facially plausible

2    when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

3    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4           Under 35 U.S.C. § 101, an invention is patentable if it claims "any new and useful process,

5    machine, manufacture, or composition of matter, or any new and useful improvement thereof."

6    Although § 101 is interpreted broadly, the Supreme Court has defined three patent-ineligible

7    concepts:  laws of nature, physical phenomena, and abstract ideas.  *Alice Corp. Pty. v. CLS Bank*

8    *Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,

9    132 S. Ct. 1289, 1293 (2012)); *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980).

10          To determine whether an invention is patentable, courts apply the two-step framework

11   articulated by the Supreme Court in *Alice*.  First, a court must "determine whether the claims at

12   issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355.  If they

13   are, a court must then "consider the elements of each claim both individually and as an ordered

14   combination to determine whether the additional elements transform the nature of the claim into a

15   patent-eligible application." *Id.* (internal quotations and citations omitted).

16          The issue of patent invalidity under § 101 presents a question of law.  *See DDR Holdings,*

17   *LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).  Accordingly, a district court may

18   resolve the issue of § 101 patent eligibility on a motion to dismiss.  *See e.g., Content Extraction &*

19   *Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming

20   determination of ineligibility made on motion to dismiss); *Ultramercial, Inc. v. Hulu, LLC*, 772

21   F.3d 709, 714, 717 (Fed. Cir. 2014) (reviewing determination of ineligibility made on motion to

22   dismiss).  However, a court may need to defer the § 101 analysis until after claim construction

23   when a patentee identifies terms requiring construction and explains how resolution of

24   construction disputes is material to resolving the § 101 challenge.  *See Protegrity USA, Inc. v.*

25   *Netskope, Inc.*, No. 15-CV-02515-YGR, 2015 WL 6126599, at *3 (N.D. Cal. Oct. 19, 2015)

26   ("[T]he Court notes that where a patentee fails to explain which terms require construction or how

27   the analysis would change were those constructions adopted, the Court may rule on the validity

28   challenge prior to construing claims."); *see also Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007,

United States District Court
Northern District of California

3

1    1012 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015) ("[C]laim construction is a

2    prerequisite to the § 101 inquiry only where claim construction disputes are relevant.").

3    **B.    Analysis**

4    Defendant moves to dismiss Plaintiff's complaint on the ground that the '317 Patent is

5    directed to the patent-ineligible, abstract idea of "using the results of a breathalyzer test to predict

6    how intoxicated a person will be in the future," and thus is invalid under § 101.  Mot. at 3.

7    Plaintiff responds that the claims of the '317 Patent constitute a patentable improvement and

8    transformation of an existing technological process — breath alcohol content analysis using a

9    breathalyzer.  Dkt. No. 28 ("Opp'n") at 17-22; Dkt. No. 52 ("Pl. Supp. Br.") at 1-2.  Moreover,

10   Plaintiff contends, there are factual issues regarding the proper construction of the "receiving" and

11   "determining" terms that make dismissal on a Rule 12(b)(6) motion premature.  Opp'n at 6, 10.

12   The Court holds that claim construction is necessary to fully understand the basic character of the

13   claimed subject matter, making dismissal premature at this stage.

14   The Federal Circuit has recently issued two decisions, *Enfish, LLC v. Microsoft Corp.*, 822

15   F.3d 1327 (Fed. Cir. 2016), and *In re: TLI Communications LLC Patent Litig.*, 823 F.3d 607 (Fed.

16   Cir. 2016), which provide additional clarification regarding step one of the *Alice* test.  Issued first,

17   *Enfish* instructs that claims are not directed to an abstract idea if their "plain focus . . . is on an

18   improvement to computer functionality" or computer capabilities.  *Enfish*, 822 F.3d at 1336.

19   Published less than a week later, *TLI* emphasizes that claims are abstract, however, if they are

20   directed to "the use of conventional or generic technology in a nascent but well-known

21   environment, without any claim that the invention reflects an inventive solution to any problem

22   presented by combining the two."  *TLI*, 823 F.3d at 612.  Thus, claims that describe "a new

23   telephone, a new server, or a new physical combination of the two" are not abstract, but claims

24   that describe a system and methods in "purely functional terms" without "any technical details for

25   the tangible components" are abstract.  *Id.*

26   In the wake of *Enfish* and *TLI*, the parties disagree over whether the '317 Patent's claims,

27   when properly construed, are directed at a patent-ineligible concept under step one of the *Alice*

28   test.  Plaintiff asserts that, like the claims in *Enfish*, the claims of the '317 Patent "improve an

United States District Court
Northern District of California

1   existing technological process of measuring intoxication with a breathalyzer, which only has the

2   capability of determining a user's current level of intoxication." Pl. Supp. Br. at 2. Specifically,

3   Plaintiff contends that the "receiving" and "determining" steps of the '317 Patent require the use

4   of a physical breathalyzer to "receive" a user's breath sample and "determine" a user's

5   intoxication metric. Opp'n at 10-14. Plaintiff argues that the '317 Patent then improves upon the

6   traditional breathalyzer by using the breathalyzer's output to generate a predicted temporal profile

7   and notify the user of his projected future levels of intoxication or the effects of his current level of

8   intoxication. *Id.*; Pl. Supp. Br. at 2.

9          In contrast, Defendant contends that under its interpretation of the "receiving" and

10  "determining" steps, the '317 Patent can be infringed "without using or possessing a

11  breathalyzer." Dkt. No. 51 ("Def. Supp. Br.") at 2. Defendant argues that the first step of the '317

12  Patent can begin with an individual "receiving a set of signals" that has at some point in the past

13  been derived from a breathalyzer, and that the remainder of the '317 Patent's claims only recite

14  the use of a generic processor to manipulate the information received. *Id.* at 2-3. Defendant

15  argues that under its construction, the '317 Patent fails to recite a technological improvement to a

16  breathalyzer, "instead mak[ing] use of the existing computational capabilities of a generic

17  processing system." *Id.*

18         Given this dispute, the Court finds claim construction necessary to determine whether the

19  '317 Patent is directed at a patentable concept because it claims an improvement to breathalyzer

20  technology. Defendant's motion is premature because the Court needs to construe material

21  disputed claims in order to fully understand the basic nature of the claimed invention. *See*

22  *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir.

23  2012) ("[T]he determination of patent eligibility requires a full understanding of the basic

24  character of the claimed subject matter."). Specifically, the Court must determine whether, for

25  example, the "receiving," "determining," and "processing" steps of the '317 Patent recite "the use

26  of conventional or generic technology in a nascent but well-known environment" or describe a

27  truly innovative solution in breathalyzer technology. *See TLI*, 823 F.3d at 612.

28

United States District Court
Northern District of California

5

## III.    CONCLUSION

The Court finds Defendant's motion to dismiss on the basis of patent ineligibility under 35 U.S.C. § 101 premature, and denies the motion without prejudice.  Defendant may bring a renewed motion on § 101 patent ineligibility grounds after the completion of claim construction.

The Court sets a case management conference on October 18, 2016, at 2:00 p.m.  The parties are directed to meet and confer and file a joint case management statement by October 11, 2016.  In particular, the parties should discuss whether they agree on a proposed case schedule.

**IT IS SO ORDERED.**

Dated:  September 30, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge